1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    JESUS ALVAREZ,                              No.  2:13-cv-01798-MCE-KJN

12                 Plaintiff,

13          v.                                    **MEMORANDUM AND ORDER**

14    C&S WHOLESALE GROCERS, INC.,
      et al.,
15
16                 Defendants.

17          Through this action, Plaintiff Jesus Alvarez ("Plaintiff") seeks relief from

18    Defendants C&S Wholesale Grocers, Inc. ("C&S") and Tracy Logistics, LLC ("Tracy

19    Logistics") (collectively "Defendants") for violations of the California Labor Code and

20    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.  Plaintiff

21    originally filed his Complaint in the Superior Court of California, County of San Joaquin.

22    On August 29, 2013, Defendants removed Plaintiff's case to federal court pursuant to

23    the Court's diversity jurisdiction.  Presently before the Court is Plaintiff's Motion to

24    Remand.  Mot., Nov. 18, 2013, ECF No. 16.[1]  Also before the Court is Defendants'

25    Motion to Supplement/Amend Notice of Removal.  Mot., Jan. 15, 2014, ECF No. 24.

26    ///

27    _____

28          [1] This motion is also listed at ECF No. 6 and ECF No. 14.  This order adjudicates all three
      motions.

                                                1

1    For the reasons set forth below, Plaintiff's Motion to Remand is DENIED and

2    Defendants' Motion to Supplement is GRANTED.[2]

3

4                              **BACKGROUND**[3]

5

6    Defendant Tracy Logistics has employed Plaintiff as a Warehouse Supervisor at

7    its Stockton Facility since August 2006.  Generally speaking, Plaintiff alleges that he was

8    hired by Defendants, misclassified as an "exempt" employee, and paid on a salary basis

9    without any compensation for overtime hours worked, missed meal periods, or rest

10   breaks.

11   Plaintiff further claims that he worked over eight hours per day and/or more than

12   forty hours per week during the course of his employment with Defendants.  According to

13   Plaintiff, although Defendants knew or should have known that he was entitled to receive

14   certain wages as overtime compensation, he did not receive such wages.  Plaintiff also

15   asserts he did not receive all his rest and meal periods; nor did he receive one additional

16   hour of pay when he missed a meal period.  Additionally, while Defendants knew or

17   should have known that Plaintiff was entitled to receive at least minimum wages as

18   compensation, he did not receive at least minimum wages for all hours worked.

19   Plaintiff goes on to allege that he was entitled to timely payment of all wages

20   during his employment and to timely payment of wages earned upon termination of his

21   employment, but he did not receive timely payment of these wages either during his

22   employment or upon termination.  Likewise, Defendants did not provide Plaintiff with

23   complete and accurate wage statements, although Defendants knew or should have

24   known that Plaintiff was entitled to these statements.

25   ///

26   _____

     [2] Because oral argument would not be of material assistance, the Court ordered these matters
27   submitted on the briefs pursuant to E.D. Cal. Local Rule 230(g).

     [3] The following recitation of facts is taken, at times verbatim, from Plaintiff's Complaint.  ECF
28   No. 1.

1    Plaintiff also asserts that Defendants failed to keep complete and accurate payroll

2    records.  Finally, Defendants falsely represented to Plaintiff that the wage denials were

3    proper.  Instead, according to Plaintiff, these wage denials were improper and served the

4    purpose of increasing Defendants' profits.

5    These claims were brought by a different plaintiff in a class action in state court,

6    Tompkins v. C&S Wholesale Grocers, Inc., on February 3, 2011.[4]  On March 14, 2011,

7    the defendants in the Tompkins action removed the case to federal court, asserting

8    diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  The Tompkins plaintiff then moved

9    to remand the case, on the grounds that the operative complaint alleged an amount in

10   controversy below the $75,000 threshold.  The Court granted the plaintiff's motion to

11   remand, finding that there was insufficient evidence to show that the amount in

12   controversy for the plaintiff's individual claims exceeded $75,000.  The defendants again

13   removed the case to federal court on October 26, 2011, based on discovery conducted

14   prior to that date.  The Tompkins plaintiff again moved to remand, and the Court again

15   granted the plaintiff's motion on the grounds that the defendants had not met their

16   burden of proving that the amount in controversy on the plaintiff's individual claims

17   exceeded the jurisdictional threshold.

18   On June 15, 2012, after the Court remanded the case a second time, the

19   Tompkins defendants deposed the named plaintiff in that case, David Tompkins.  On

20   September 21, 2012, the defendants offered Mr. Tompkins a Joint Offer to Compromise

21   under California Civil Procedure Code § 998(b)(2), in the amount of $75,001.

22   Mr. Tompkins accepted the Joint Offer on October 3, 2012.

23   The subject wage and hour claims were subsequently brought in a new class

24   action, Bicek v. C&S Wholesale Grocers, Inc., No. 13-cv-00411, on behalf of the same

25   putative class.  Bicek, which is also before this Court, is a class action which this Court

26   has jurisdiction over pursuant to the Class Action Fairness Act

27

28   [4] All facts relating to the Tompkins action are taken from Defendants' Opposition to Plaintiff's Motion to Remand.  ECF No. 14.

1

2

**STANDARD**

3

### A.   Supplement Notice of Removal

4      28 U.S.C. § 1446 allows a defendant to remove an action to federal court within

5   thirty days from the date of receipt of a copy of the initial pleading.  It is well settled that

6   the defendant's notice of removal may be amended freely prior to the expiration of this

7   initial thirty-day period.  Smiley v. Citibank (S. Dakota), N.A., 863 F. Supp. 1156, 1158

8   (C.D. Cal. 1993) (citing Richardson v. United Steelworkers of Am., 864 F.2d 1162, 1159

9   (5th Cir. 1989), cert. denied, 495 U.S. 946 (1990)).  "After the first thirty days, however,

10   the cases indicate that the petition may be amended only to set out more specifically

11   grounds for removal that already have been stated, albeit imperfectly, in the original

12   petition; new grounds may not be added and missing allegations may not be furnished."

13   Id. at 1159 (citing 14A C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure

14   § 3733 (2d ed. 1985)).  "The majority of courts, for example, allow defendants to amend

15   'defective allegations of jurisdiction' in their notice as long as the initial notice of removal

16   was timely filed and sets forth the same legal grounds for removal."  Id. (citing Barrow

17   Dev. Co. v. Fulton Ins. Co., 418 F.2d 316, 318 (9th Cir. 1969) (permitting amendment of

18   removal petition to cure inadequate allegation of the citizenship of the defendant

19   corporation)).  "If the removing party seeks to cure a defect in the removal petition after

20   the thirty day period has elapsed . . . the court has discretion to prohibit such an

21   amendment."  Hemphill v. Transfresh Corp., No. C–98–0899–VRW, 1998 WL 320840,

22   at *4 (N.D. Cal. June 11, 1998).

23   ### B.   Remand

24      There are two bases for federal subject matter jurisdiction: (1) federal question

25   jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.

26   A district court has federal question jurisdiction in "all civil actions arising under the

27   Constitution, laws, or treaties of the United States."  Id. § 1331.  A district court has

28   diversity jurisdiction "where the matter in controversy exceeds the sum or value of

4

1  $75,000, . . . and is between citizens of different states, or citizens of a State and citizens

2  or subjects of a foreign state . . . ."  Id. § 1332(a)(1)-(2).  Diversity jurisdiction requires

3  complete diversity of citizenship, with each plaintiff being a citizen of a different state

4  from each defendant.  28 U.S.C. § 1332(a)(1); Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68

5  (1996) (stating that complete diversity of citizenship is required).

6         When a party brings a case in state court in "which the district courts of the United

7  States have original jurisdiction," the defendant may remove it to the federal court

8  "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "The party

9  invoking the removal statute bears the burden of establishing federal jurisdiction."

10 Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v.

11 Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  A motion to remand is the

12 proper procedure for challenging removal.  "The party invoking the removal statute bears

13 the burden of establishing federal jurisdiction."  Ethridge, 861 F.2d at 1393 (internal

14 citations omitted).  Courts "strictly construe the removal statute against removal

15 jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations

16 omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the court

17 must grant the motion for remand.  Id.  Additionally, "[i]f at any time before final judgment

18 it appears that the district court lacks subject matter jurisdiction, the case shall be

19 remanded" to state court.  28 U.S.C. § 1447(c).

20

21                                    **ANALYSIS**

22

23     **A.     Supplement Notice of Removal**

24         Defendants seek to amend or supplement their Notice of Removal to include new

25 allegations and evidentiary support recently obtained through Defendants' deposition of

26 Plaintiff.  Plaintiff's deposition was taken on December 16, one day before the Court

27 submitted Plaintiff's Motion to Remand on the briefs.  Defendants contend that Plaintiff's

28 deposition testimony establishes that the amount in controversy is met, and the Notice of

1  Removal should be amended or supplemented to include this additional summary

2  judgment-type evidence.

3      Plaintiff opposes the motion, arguing first that it is a third attempt to oppose

4  Plaintiff's motion to remand.  Opp'n, ECF No. 25 at 4.  Additionally, Plaintiff argues that

5  the deposition testimony is insufficient to prove that the amount in controversy exceeds

6  $75,000, because Plaintiffs fail to use the actual number of weeks worked by Plaintiff in

7  calculating Plaintiff's damages, and instead use the number of workweeks which

8  Defendants employed Plaintiff.

9      As set forth above, "[t]he majority of courts . . . allow defendants to amend

10  'defective allegations of jurisdiction' in their notice as long as the initial notice of removal

11  was timely filed and sets forth the same legal grounds for removal."  Smiley,

12  863 F. Supp. at 1159 (citing Barrow, 418 F.2d at 318) (permitting amendment of removal

13  petition to cure inadequate allegation of the citizenship of the defendant corporation).

14  However, when defendants attempt to assert totally new grounds for removal or "to

15  create jurisdiction where none existed," courts uniformly deny leave to amend.  Rockwell

16  Int'l Credit Corp. v. U.S. Aircraft Ins. Grp., 823 F.2d 302, 304 (9th Cir. 1987), overruled

17  on another ground by Partington v. Gedan, 923 F.2d 686 (9th Cir. 1991).

18      Indeed, courts frequently repeat Barrow's statement that "the removal petition

19  cannot be . . . amended to add allegations of substance but solely to clarify 'defective'

20  allegations of jurisdiction previously made."  418 F.2d at 317; see also Emeryville Redev.

21  Agency v. Clear Channel Outdoor, No. C 06-01279 WHA, 2006 WL 1390561, at *3 (N.D.

22  Cal. May 22, 2006) (discussing "allegations of substance" rule); Hemphill, 1998 WL

23  320840 at *4 (citing Barrow, 418 F.2d at 317); Nat'l Audobon Soc. v. Dep't of Water &

24  Power of City of L.A., 496 F. Supp. 499, 503 (E.D. Cal. 1980) (same).  In Barrow, the

25  defendant's removal notice alleged "simply that plaintiff was a citizen of Alaska and

26  defendant of New York," rather than "disclos[ing] both the state of incorporation and the

27  location of the corporation's principal place of business."  418 F.2d at 318.  The Ninth

28  Circuit followed other circuit courts in holding that these "allegations [were] defective in

1   form but not so lacking in substance as to prevent their amendment." Id. (citing Hendrix
2   v. New Amsterdam Cas. Co., 390 F.2d 299 (10th Cir. 1968)).

3          Furthermore, when a defendant must show that the amount in controversy
4   exceeds the statutory amount, the defendant "may rely upon affidavits and declarations
5   to make that showing; the law in the Ninth Circuit expressly contemplates the district
6   court's consideration of some evidentiary record." Lewis v. Verizon Commc'ns, Inc.,
7   627 F.3d 395, 400 (9th Cir. 2010); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115,
8   1117 (9th Cir. 2004) (court may consider "summary-judgment-type evidence relevant to
9   the amount in controversy at the time of removal"). While "[i]t is best to make this
10   showing in the notice of removal itself, . . . a party can supplement its showing in an
11   opposition to a motion to remand." Waller v. Hewlett-Packard Co., 11CV0454-LAB RBB,
12   2011 WL 8601207, at *2 (S.D. Cal. May 10, 2011) (citing Cohn v. Petsmart, Inc.,
13   281 F.3d 837, 840 n.1 (9th Cir. 2002)).

14          In Cohn v. Petsmart, the Ninth Circuit noted that "Petsmart's notice of removal
15   was deficient because it only summarily alleged that the amount in controversy
16   exceeded $75,000, without alleging any underlying facts to support this assertion."
17   281 F.3d at 843 (citing Gaus, 980 F.2d at 567). However, Petsmart's opposition to the
18   plaintiff's motion to remand provided further factual basis for the amount in controversy
19   alleged in the notice of removal, explaining that the $75,000 amount was based on the
20   plaintiff's settlement demand. The Ninth Circuit found that "the district court did not err in
21   construing Petsmart's opposition as an amendment to its notice of removal." Id. (citing
22   Willingham v. Morgan, 395 U.S. 402, 407 n.3 (1969) ("It is proper to treat the removal
23   petition as if it had been amended to include the relevant information contained in the
24   later-filed affidavits"); 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be
25   amended, upon terms, in the trial or appellate courts.")).

26          Subsequently, the Ninth Circuit stated that Cohn distinguished Gaus, and stands
27   for the proposition "that a district court may consider later-provided evidence as
28   amending a defendant's notice of removal." Gen. Dentistry For Kids, LLC v. Kool

7

1    Smiles, P.C., 379 F. App'x 634, 636 (9th Cir. 2010); see also Morella v. Safeco Ins. Co.

2    of Ill., 2:12-CV-00672 RSL, 2012 WL 2903084, at *1 (W.D. Wash. July 16, 2012) (citing

3    Cohn, 281 F.3d 837) ("[T]he post-removal submission of supporting evidence can be

4    treated as amending the notice of removal.").

5           Here, Defendants have not changed their ground for removal from that originally

6    asserted in the notice of removal—Defendants originally asserted diversity jurisdiction,

7    and still assert only that ground.  Cf. Rockwell Int'l Credit Corp., 823 F.2d at 304.

8    Defendants merely seek to supplement their original Notice of Removal with facts that

9    support these bases for jurisdiction.  Furthermore, Defendants' Notice of Removal is not

10   so lacking in substance that it could not be amended or supplemented with the

11   information contained in Plaintiff's deposition.  While it is true that Defendants seek to

12   amend their notice of removal not through evidence submitted in opposition to a motion

13   to remand, but through a separate noticed motion, the Court will not "exalt form over

14   substance and legal flaw-picking over the orderly disposition of cases properly

15   committed to federal courts."  Piazza v. EMPI, Inc., 1:07-CV-00954-OWW-GSA, 2008

16   WL 590494, at *8 (E.D. Cal. Feb. 29, 2008) (quoting Barrow, 418 F.2d at 318).

17          Accordingly, Defendants' Motion to Amend/Supplement Notice of Removal is

18   GRANTED, ECF No. 24, and Defendants' Notice of Removal, ECF No. 1, is amended to

19   include the portions of Plaintiff's deposition testimony submitted by Defendants at ECF

20   No. 24-2 at 5-8.

21          **B.     Remand**

22          Defendants removed the instant case pursuant to the Court's diversity jurisdiction.

23   As set forth above, a district court has diversity jurisdiction "where the matter in

24   controversy exceeds the sum or value of $75,000, . . . and is between citizens of

25   different states, or citizens of a State and citizens or subjects of a foreign state . . . ." Id.

26   § 1332(a)(1)-(2).

27   ///

28   ///

1        **1.      Citizenship**

2        Diversity jurisdiction requires complete diversity of citizenship, with each plaintiff

3   being a citizen of a different state from each defendant.  28 U.S.C. § 1332(a)(1);

4   Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996) (stating that complete diversity of

5   citizenship is required).

6        Here, it is clear that Plaintiff is a citizen of California.  The complaint alleges that

7   "Plaintiff Jesus Alvarez is an individual residing in the State of California." ECF No. 1-2 at

8   5.  The Notice of Removal also states that "Plaintiff alleges that he 'is an individual

9   residing in the State of California' . . . .  Therefore, Plaintiff was domiciled in the State

10  of California at the time he filed this action and is a citizen of California for the purposes

11  of diversity jurisdiction in this matter.'"  ECF No. 1 at 6.

12       C&S is a corporation, and thus has dual citizenship for diversity purposes.  See

13  28 U.S.C. § 1332(c).  A corporation is a citizen both of the state where it was

14  incorporated and the state where it has its primary place of business.  Id.

15  Because C&S is incorporated in Vermont with its principal place of business in New

16  Hampshire, it is a citizen of Vermont and New Hampshire for purposes of diversity

17  jurisdiction.

18       Next is the issue of Tracy Logistics' citizenship.  Defendants state that an LLC

19  such as Tracy Logistics is "also a citizen of every state of which its owners/members are

20  citizens and is a citizen of the State under whose laws it is organized and the State

21  where it has its principal place of business." Opp'n at 14.  However, for purposes of

22  diversity jurisdiction in a case removed pursuant to 28 U.S.C. § 1441, "like a partnership,

23  an LLC is a citizen of every state of which its owners/members are citizens." Johnson v.

24  Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (citations

25  omitted).  It is true that under the Class Action Fairness Act, the citizenship of an LLC is

26  determined by reference to its principal place of business and the state of organization.

27  ///

28  ///

1    However, this case was not removed pursuant to the Class Action Fairness Act, and is

2    not a class action.  Accordingly, the rule for determining the citizenship of Tracy Logistics

3    is that set forth by the Ninth Circuit in <u>Johnson</u>.

4        Defendants' removal papers make clear that Tracy Logistics is diverse from

5    Plaintiff.  Notice of Removal, ECF No. 1 at 7.  Tracy Logistics is owned by its sole

6    member, C&S Logistics of Sacramento/Tracy LLC, which in turn is wholly owned by its

7    sole member, C&S Acquisitions LLC.  C&S Acquisitions LLC is wholly owned by its sole

8    member, C&S Wholesale Grocers, Inc., which is a citizen of both Vermont and New

9    Hampshire.  Tracy Logistics, like C&S Wholesale Grocers, Inc., is therefore a citizen of

10    Vermont and New Hampshire.

11        Thus, because Plaintiff is a citizen of California, while Defendants are citizens of

12    Vermont and New Hampshire, there is complete diversity between Plaintiff and

13    Defendants.

14           **2.**      **Amount in Controversy**

15              **a.**      **Defendants' Burden**

16        Plaintiff contends that the Court lacks jurisdiction because he alleges that the

17    amount in controversy for their individual claims is less than $75,000 and Defendants

18    have failed to prove with legal certainty that the jurisdictional amount is met.  Specifically,

19    the Complaint states in the Jurisdiction and Venue allegations that "the 'amount in

20    controversy' for the named Plaintiff, including claims for compensatory damages,

21    restitution, penalties, and pro rata share of attorneys' fees is less than [$75,000]."  ECF

22    No. 1-2 at 5.  No specific amount is stated in Plaintiff's prayer for relief.  <u>See</u> Compl. at

23    21-25.  The prayer for relief lists civil and statutory penalties; reasonable attorneys' fees

24    and costs of the suit; actual, consequential, and incidental losses and damages; and

25    other and further relief as the Court deems just and proper.  Defendants, on the other

26    hand, contend that the standard for establishing the amount in controversy is a

27    preponderance of the evidence.

28    ///

1    For the reasons set forth in the related case Cagle v. C&S Wholesale Grocers,

2 Inc., No. 2:13-cv-02134, in the Court's February 19, 2014, Order, the Court finds that the

3 standard for determining whether Defendants meet their burden of establishing the

4 amount in controversy is the preponderance of the evidence.  Under this standard, "the

5 removing party's burden is 'not daunting,' and defendants are not obligated to 'research,

6 state, and prove the plaintiff's claims for damages.'"  Behrazfar v. Unisys Corp.,

7 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting Korn v. Polo Ralph Lauren Corp.,

8 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)).  When a "[d]efendant's calculations

9 [are] relatively conservative, made in good faith, and based on evidence wherever

10 possible," the court may find that the "[d]efendant has established by a preponderance of

11 the evidence that the amount in controversy" is met.  Id. (citing Neville v. Value City

12 Dep't Stores, LLC., No. 07-cv-53-DRH, 2008 WL 2796661, *5-6 (S.D. Ill. July 18, 2008);

13 Eisler v. Med. Shoppe Int'l, Inc., NO. 4:05CV2272 JCH, 2006 WL 415953, *2 (E.D. Mo.

14 2006)).

15                      **b.      Amount in Controversy Calculations**

16    Plaintiff first takes issue with Defendants' use of a declaration made by Plaintiff in

17 April 2011, which Defendants offer as evidence of the hours Plaintiff worked through

18 August 2013.   Mot. at 10.  Plaintiff also argues that Defendants' calculation of overtime

19 hours worked are "fundamentally flawed" because they rely on "unverified assumptions"

20 and incorrect math.  Mot. at 10-11.  Next, Plaintiff argues—in one sentence—that

21 because Defendants have not attempted to calculate their attorneys' fees, those fees

22 cannot be included in the calculation of the amount in controversy.  Finally, Plaintiff

23 asserts that Defendants may not rely on the $75,001 settlement in the Tompkins action.

24    Plaintiff does not take issue with Defendants' calculation of the amount in

25 controversy for Plaintiff's Non-Compliant Wage Statement Claim, which Defendants

26 estimate is $4000, and Plaintiff's claim for Failure to Keep Accurate Payroll Records,

27 which Defendants estimate is $500.

28 ///

1

Overtime Claim

2      Defendants' Notice of Removal cites to Plaintiff's declaration, which states that in

3 April 2011, Plaintiff worked from 2:30 AM to 1:30 PM Monday through Friday; from

4 August 1, 2010, to April 2011, Plaintiff's schedule alternated each week between a

5 Wednesday-Saturday schedule and a Tuesday-Saturday schedule, from 4:30 AM to

6 3:30 PM on Tuesdays, Wednesdays and Thursdays, and from 4:30 AM to approximately

7 5:00 PM on Fridays and Saturdays.  From 2009 to July 2010, Plaintiff typically worked 5

8 days per week, from 5:30 AM to 4:30 PM.

9      Because Defendants submitted Plaintiff's deposition testimony, which states that

10 in 2011 and 2012, Plaintiff worked approximately 12 to 14 hours per day, four to five

11 days per week, ECF No. 24-2 at 6-7, the Court need not rely on Defendants' assertions

12 that the 2011 declaration is representative of the hours Plaintiff worked through 2013.

13      Thus, at a bare minimum, there is summary-judgment type evidence before the

14 Court that from 2009 to July 2010 (82 weeks), Plaintiff worked 11-hour days, 5 days per

15 week; from August 2010 to April 2011 (34 weeks), Plaintiff worked 11-hour days 2 or 3

16 days per week, and 12.5-hour days 2 days per week; in April 2011 Plaintiff worked

17 11-hour days 5 days per week (3 weeks); for the remainder of 2011 (36 weeks) and

18 2012 (52 weeks), Plaintiff worked, at a minimum 12-hour days 4 days per week.

19 Plaintiff's salary was $29.47 per hour.[5]

20      The Court therefore calculates the amount in controversy for Plaintiff's overtime

21 claim as follows: for 2009 to July 2010: (82 weeks x 15 hours OT x $29.47 per hour x

22 1.5) = $54,372.15.  For August 2010 through April 2011: (17 weeks x 14 OT x $29.47

23 per hour x 1.5 = $10,520) + (17 weeks x 17 hours OT per week x $29.47 per hour x 1.5

24 = $12,775.25) + (34 weeks x 1 hour DT per week x 29.47 x 2 = $2,003.96)= $25,299.21.

25 For the remainder of 2011: (36 weeks x 16 hours OT per week x $29.47 per hour x 1.5 =

26 $25,462.08).  Finally, for 2012: (52 x 16 hours OT per week X $29.47 per hour x 1.5 =

27

28

[5] Although Plaintiff contends that there is not sufficient evidence to use this amount to calculate the amount in controversy, the Court finds that there is sufficient evidence to use this amount under the applicable preponderance of the evidence standard.

1    $36,778.56).  Thus, the total amount in controversy for Plaintiff's overtime claim is

2    $141,912, which is well above the jurisdictional threshold.

3        The jurisdictional amount in controversy is therefore satisfied, and the Court need

4    not address the calculation of attorneys' fees, nor the weight afforded to the <u>Tompkins</u>

5    settlement.  Plaintiff's Motion to Remand is DENIED.

6

7                              **CONCLUSION**

8

9        For the reasons just stated, IT IS HEREBY ORDERED THAT:

10   1.      Plaintiff's Motions to Remand are DENIED, ECF No. 6, 14, 16; and

11   2.      Defendants' Motion to Supplement/Amend Notice of Removal is

12           GRANTED, ECF No. 24.

13   IT IS SO ORDERED.

14   Dated:  February 27, 2014

15

16

17   _____
     MORRISON C. ENGLAND, JR., CHIEF JUDGE
18   UNITED STATES DISTRICT COURT

19

20

21

22

23

24

25

26

27

28